Fred W. Schwinn (SBN 225575)
Raeon R. Roulston (SBN 255622)
CONSUMER LAW CENTER, INC.
12 South First Street, Suite 1014
San Jose, California  95113-2418
Telephone Number: (408) 294-6100
Facsimile Number: (408) 294-6190
Email Address: fred.schwinn@sjconsumerlaw.com

O. Randolph Bragg (Pro Hac Vice)
HORWITZ, HORWITZ & ASSOCIATES, LTD.
25 East Washington Street, Suite 900
Chicago, Illinois  60602-1716
Telephone Number: (312) 372-8822
Facsimile Number: (312) 372-1673
Email Address: rand@horwitzlaw.com

Attorneys for Plaintiff
MARLA MARIE DAVIS

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| MARLA MARIE DAVIS, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>CACH, LLC, a Colorado limited liability company, SQUARETWO FINANCIAL CORPORATION, a Delaware corporation, MANDARICH LAW GROUP, LLP, a California limited liability partnership, RYAN EARL VOS, individually and in his official capacity; ELIZABETH GRACE SUTLIAN, individually and in her official capacity, NADER SAMIR SABAWI, individually and in his official capacity,<br><br>Defendants. | Case No. 5:14-CV-03892-BLF-HRL<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO COMPEL ARBITRATION AND TO STAY CLAIMS**<br><br>Hearing Date:     February 19, 2015<br>Hearing Time:     9:00 a.m.<br>Hearing Judge:   Beth Labson Freeman<br>Hearing Courtroom: 3, 5th Floor<br>Hearing Location:  280 South First Street<br>                               San Jose, California |

COMES NOW Plaintiff, MARLA MARIE DAVIS, by and through counsel Fred W. Schwinn and Raeon R. Roulston of Consumer Law Center, Inc., and O. Randolph Bragg of the firm Horwitz, Horwitz & Associates, Ltd., and hereby submits her Memorandum of Points and Authorities in

1. Opposition to Defendants' <u>Motion to Compel Arbitration and to Stay Claims</u>. Doc. 26.

**TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................................................i

TABLE OF AUTHORITIES...........................................................................................................ii

I.  INTRODUCTION......................................................................................................................1

II. PROCEDURAL HISTORY........................................................................................................2

III. ARGUMENT AND AUTHORITIES........................................................................................2

      A. STANDARD OF REVIEW................................................................................................2

      B. DEFENDANTS CANNOT SHOW AN AGREEMENT TO ARBITRATE EXISTS.............3

            1.  Authenticity............................................................................................................3

            2.  No connection to Plaintiff or her HSBC Bank Nevada, N.A., account..................6

            3.  Physical deficiencies...............................................................................................7

      C. DEFENDANTS CANNOT SHOW THAT THEY ARE COVERED PARTIES,
OR THAT PLAINTIFF'S FDCPA CLAIMS ARE COVERED CLAIMS....................................8

      D.  ALTERNATIVELY, DEFENDANTS HAVE CONSTRUCTIVELY WAIVED
ANY RIGHTS THEY HAD UNDER THE ARBITRATION AGREEMENT.............................9

            1.  Defendants Knew of Their Existing Right to Arbitration.........................................10

            2.  Defendants Acted in a Manner Inconsistent with their Right to Arbitrate...............10

            3.  Plaintiff Has been Prejudiced by Defendants' Inconsistent Acts..............................10

      E.  EQUITY PREVENTS ENFORCEMENT OF THE ARBITRATION AGREEMENT..........11

IV.  CONCLUSION........................................................................................................................12

# TABLE OF AUTHORITIES

## CASES

*AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011)..................................................2

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643 (1986)...............................2, 3

*Cabintree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388 (7th Cir. 1995)....................9

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126 (9th Cir. 2000).............................2

*Christensen v. Dewor Developments*, 33 Cal.3d 778 (Cal. 1983)..............................................9

*Circuit City Stores, Inc. v. Adams*, 279 F.3d 889 (9th Cir. 2002)................................................3

*Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681 (1996)..........................................................3

*Lewallen v. Green Tree Servicing, L.L.C.*, 487 F.3d 1085 (8th Cir. 2007).................................9

*Miller v. Fairchild Industries, Inc.*, 885 F.2d 498 (9th Cir. Cal. 1989)......................................5

*Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394 (1996)..................................................3

*United Computer System, Inc. v. AT&T Corporation*, 298 F.3d 756 (9th Cir. 2002)...............10

*Van Ness Townhouses v. Mar Industries Corp.*, 862 F.2d 754 (9th Cir. 1988).........................10

## STATUTES

9 U.S.C. § 2..................................................................................................................................2

## MISCELLANEOUS

Fed. R. Evid. 803(6).....................................................................................................................4

S. Rep. No. 95-382.....................................................................................................................12

# I. INTRODUCTION

This is a class action case brought by an individual consumer, on behalf of herself and all others similarly situated, to address Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (hereinafter "FDCPA"). The violations stem from Defendants' communications attempting to collect a consumer debt from Plaintiff. The subject collection communication from Defendants to Plaintiff is attached to the Class Action Complaint (Doc. 1) as an exhibit.

Generally, Plaintiff is alleged to have incurred a financial obligation, namely a consumer credit account issued by HSBC Bank Nevada, N.A. (hereinafter "the debt"). The debt was thereafter placed, assigned or otherwise transferred to Defendants for collection from Plaintiff, either directly or through a series of intermediate assignees. On April 29, 2014, Defendants filed a lawsuit against Plaintiff in the Superior Court of California, Santa Clara County captioned *CACH, LLC v. Marla M. Davis*, Case No. 5-14-CV-008165, which sought to collect the defaulted consumer debt from Plaintiff. Thereafter, on or about August 15, 2014, Defendants sent a document titled Declaration Under Penalty of Perjury Pursuant to CCP §98 in Lieu of Direct Testimony and Authenticating Documentary Evidence directly to Plaintiff. Plaintiff alleges that Defendants' Declaration Under Penalty of Perjury Pursuant to CCP §98 in Lieu of Direct Testimony and Authenticating Documentary Evidence included deceptive misleading misrepresentations in violation of 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), and 1692f.

Plaintiff brings this action on behalf of a class of all other persons similarly situated. Plaintiff tentatively defines the class as (i) all persons residing in California, (ii) who were served by Defendants with a Declaration in Lieu of Direct Testimony at Trial, pursuant to California Code of Civil Procedure § 98, (iii) where the declarant was located more than 150 miles from the courthouse where the collection lawsuit was pending, (iv) in an attempt to collect an alleged debt originally owed to HSBC Bank Nevada, N.A., (v) regarding a debt incurred for personal, family, or household purposes, (vi)

during the period beginning one year prior to the date of filing this matter through the date of class certification.

Plaintiff contends that the class is so numerous that joinder of all members is impractical due to Defendants' use of form litigation documents. On information and belief, litigation documents in the form of Exhibit "1" have been sent to hundreds or thousands of California class members.

## II. PROCEDURAL HISTORY

On August 27, 2014, Plaintiff filed her <u>Class Action Complaint</u> against Defendants. Doc. 1. The parties stipulated to extend Defendants' deadline to file a responsive pleading to October 14, 2014. Docs. 17, 20. On October 14, 2014, Defendants, CACH, LLC, and SQUARETWO FINANCIAL CORPORATION, filed the instant <u>Motion to Compel Arbitration and to Stay Claims</u>. Doc. 26. That same day, all remaining Defendants joined the Motion. This Memorandum of Points and Authorities is submitted in opposition thereto.

## III. ARGUMENT AND AUTHORITIES

### A. STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") provides that arbitration agreements generally shall be "valid, irrevocable, and enforceable." 9 U.S.C. § 2. But where grounds "exist at law or in equity for the revocation of any contract," courts may decline to enforce such agreements. *Id.* This provision reflects both a "liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (internal quotation marks and citations omitted). Under the FAA, the basic role for courts is to determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); see also *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986).

- 2 -
OPPOSITION TO MOTION TO COMPEL ARBITRATION       Case No. 5:14-CV-03892-BLF-HRL

during the period beginning one year prior to the date of filing this matter through the date of class certification.

Plaintiff contends that the class is so numerous that joinder of all members is impractical due to Defendants' use of form litigation documents. On information and belief, litigation documents in the form of Exhibit "1" have been sent to hundreds or thousands of California class members.

## II. PROCEDURAL HISTORY

On August 27, 2014, Plaintiff filed her <u>Class Action Complaint</u> against Defendants. Doc. 1. The parties stipulated to extend Defendants' deadline to file a responsive pleading to October 14, 2014. Docs. 17, 20. On October 14, 2014, Defendants, CACH, LLC, and SQUARETWO FINANCIAL CORPORATION, filed the instant <u>Motion to Compel Arbitration and to Stay Claims</u>. Doc. 26. That same day, all remaining Defendants joined the Motion. This Memorandum of Points and Authorities is submitted in opposition thereto.

## III. ARGUMENT AND AUTHORITIES

### A. STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") provides that arbitration agreements generally shall be "valid, irrevocable, and enforceable." 9 U.S.C. § 2. But where grounds "exist at law or in equity for the revocation of any contract," courts may decline to enforce such agreements. *Id.* This provision reflects both a "liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (internal quotation marks and citations omitted). Under the FAA, the basic role for courts is to determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); see also *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986).

The party seeking to compel arbitration has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence. *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996). "[A]rbitration is a matter of contract." *AT&T Techs., Inc.*, 475 U.S. at 648 (internal quotation marks and citation omitted). State contract law controls whether the parties have agreed to arbitrate. *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) (noting that although the FAA preempts state laws that are only applicable to arbitration agreements, general contract principles and defenses "grounded in state contract law, may operate to invalidate arbitration agreements") (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

### B. DEFENDANTS CANNOT SHOW AN AGREEMENT TO ARBITRATE EXISTS

Defendants have produced a document titled "Cardmember Agreement and Disclosure Statement," which they assert governs Plaintiff's account with HSBC Bank Nevada, N.A. Doc. 28, Exhibit A. The document is deficient, and virtually useless to this litigation, for a number of reasons. Specifically: 1) Defendants cannot authenticate the proffered document; 2) Defendants cannot show evidence that this document is related in any way to Plaintiff's account with HSBC Bank Nevada, N.A.; 3) the portion of the document provided is mostly illegible; and 4) the document is incomplete.

**1. Authenticity**

There is no evidence that Defendants' purported Cardmember Agreement is what it claims to be. Simply stated, Defendants cannot authenticate the profferred document. Defendants have filed with their Motion a declaration by Yekaterina Livits, who claims to be a "custodian of records" for CACH, LLC. Livits' Declaration should be stricken and disregarded by this Court because it contains (1) inadmissible hearsay, not subject to any exception, under Fed. R. Evid. 802; (2) hearsay within hearsay, under Fed. R. Evid. 805; (3) testimony without adequate foundation under Fed. R. Evid. 803; (4) testimony for which the Declarant lacks personal knowledge, in violation of Fed. R. Evid. 602; (5)

oral testimony as to the content of a writing, in violation of Fed. R. Evid. 1002.

Defendants will likely claim that Livits' Declaration is admissible under the "business records" exception to the hearsay rule set forth in Fed. R. Evid. 803(6). However, Defendants have not shown even one of the necessary elements to qualify the proffered document as a business record. Fed. R. Evid. 803(6) provides that a "record of an act, event, condition, opinion, or diagnosis" is not made inadmissable by the hearsay rule, if:

> (A) the record was made at or near the time by — or from information transmitted by — someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

A. At or near the time

Regarding subsection (A), Livits has not stated how the document (in this case the Cardmember Agreement) was made. Nor has Livits stated when the document was made, or by whom the document was made. Without this information, Plaintiff and the Court are left to guess whether the creator of the document had knowledge (and if so, how Livits came by her knowledge of *that* person's knowledge). The Livits Declaration should be stricken and disregarded.

B. In the course of a regularly conducted activity of a business

Livits states that the Cardmember Agreement was "maintained in the regular course and scope of business of my employer and were prepared by authorized personnel at or near the time of the conditions or events which they intend to convey." This statement merely parrots the statutory

language without adding any facts (e.g., How soon after an account is opened is a Cardmember Agreement generated? How? By whom? Where? etc). Additionally, because Livits states that her employer is CACH, LLC, and the Cardmember Agreement was (assumedly) created by HSBC Bank Nevada, N.A., this statement is not just unhelpful, but must be *per se* false. The Livits Declaration should be stricken and disregarded.

### C. Regular practice

The analysis is the same for section B above. Livits does not state whether HSBC Bank Nevada, N.A., makes Cardmember Agreements as a regular practice. Nor does Livits state whether she has knowledge of HSBC Bank Nevada, N.A.'s regular practices, or describe how Livits obtained said knowledge, if so.

### D. Custodian or other qualified witness

Only a custodian or other qualified witness may give testimony regarding subsections (A), (B) and (C) of Fed. R. Evid. 803(6). There is no evidence provided that Livits is a custodian for HSBC Bank Nevada, N.A. (especially given that Livits is employed by CACH, LLC). In fact, there is no evidence provided that Livits is even a custodian for CACH, LLC, other than her conclusory statement to that effect. Although "the foundation requirement for Rule 803(6) 'may be satisfied by the testimony of anyone who is familiar with the manner in which the document was prepared, even if he lacks firsthand knowledge of the matter reported, and even if he did not himself either prepare the record or even observe its preparation,'" *Miller v. Fairchild Industries, Inc.*, 885 F.2d 498, 514 (9th Cir. Cal. 1989), the witness must be qualified by *some* means other than a bald assertion that he or she is a custodian, to give the rule any force or effect. The Livits Declaration should be stricken and disregarded.

/ / /

E. Lack of trustworthiness

Even if all of the above four elements are met, the document may still be inadmissible if Plaintiff can show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. Plaintiff submits that the complete lack of testimony regarding any of Livits' qualifications, job duties, work history or other relevant experience shows a lack of trustworthiness. Additionally, the fact that an illegible, incomplete, copy of the Cardmember Agreement was proffered should raise an inference of untrustworthiness. Moreover, the portion of the purported Cardmember Agreement proffered is unsigned by Plaintiff, and contains nothing Plaintiff can discern which connects that document to Plaintiff or Plaintiff's HSBC Bank Nevada, N.A., account. These points are discussed in further detail below.

**2. No connection to Plaintiff or her HSBC Bank Nevada, N.A., account**

Livits represents to the Court that the document is an agreement between Plaintiff and HSBC Bank Nevada, N.A. This assertion is the textbook definition of hearsay. As set forth above, Defendants cannot authenticate the purported Cardmember Agreement. Defendants' biggest problem is that Defendants cannot provide any evidence, besides Livits' hearsay testimony, that this proffered Cardmember Agreement is related in any way to Plaintiff or her HSBC Bank Nevada, N.A., account. At best, Defendants have produced a portion of a generic Cardmember Agreement, unsigned by Plaintiff, with no reference to Plaintiff or her account.

Defendants have the burden of proving that an agreement to arbitrate exists. Without the testimony of a person with knowledge (presumably from HSBC Bank Nevada, N.A.) who can attest that the proffered Cardmember Agreement is the agreement that governs Plaintiff's account, Defendants' Motion must fail. Moreover, even if Defendants could show that at one point in time, the proffered Cardmember Agreement was applicable to Plaintiff's account (a fact not conceded and

vehemently denied by Plaintiff), Defendants would also need to show that the proffered Cardmember Agreement was not thereafter superseded or replaced by another agreement. Again, nothing in the Livits Declaration, or Defendants' two memoranda can provide this connection.

### 3. Physical deficiencies

As noted above, the Cardmember Agreement proffered by Defendants is incomplete. The document proffered appears to be a portion of a longer document, and contains pages numbered 9, 10, 11, 12, 13 and 14, as well as two un-numbered pages. Pages 1 through 8 (and perhaps unknown other pages after page 14) of the complete document are not provided. Fed. R. Evid. 1002 provides that, "An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." Defendants have not provided an original Cardmember Agreement. However, Defendants will likely argue that a duplicate is admissible. Fed. R. Evid. 1003 provides that, "A duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Plaintiff submits that admitting only a *partial duplicate* of a Cardmember Agreement that Defendants wish to use to compel arbitration is unfair. If Defendants expect the Court to enforce the terms of an agreement, Defendants should have produced the complete agreement for review.

Secondly, the document proffered is mostly illegible. The section of the document apparently regarding arbitration is reproduced below at 100% magnification.

/ / /

/ / /

/ / /

/ / /

/ / /

- 7 -
OPPOSITION TO MOTION TO COMPEL ARBITRATION        Case No. 5:14-CV-03892-BLF-HRL

[Illegible image of agreement pages 11 and 12]

It is impossible to decipher the majority of the text on the portion of the document designated as page 12. The document's terms are unclear, and as such, cannot be analyzed by Plaintiff or the Court. If Defendants expect the Court to enforce the terms of an agreement, Defendants should have produced a legible agreement for review.

### C. DEFENDANTS CANNOT SHOW THAT THEY ARE COVERED PARTIES, OR THAT PLAINTIFF'S FDCPA CLAIMS ARE COVERED CLAIMS

Plaintiff's position is that Defendants cannot show either that they are proper parties with standing to arbitrate, or that Plaintiff's FDCPA claims are covered by any valid arbitration agreement.

However, based on the physical deficiencies of the proffered document set forth above, Plaintiff lacks the ability to properly argue these issues. Simply put, without being provided a <u>complete</u> and <u>legible</u> Cardmember Agreement (which presumably includes relevant definitions and limitations on the relationship between the parties thereto), Plaintiff cannot in good faith make the argument that Defendants have failed to show that they are proper parties with standing to arbitrate, or that Plaintiff's FDCPA claims are subject to a valid arbitration agreement. Plaintiff does not waive these arguments, and sets forth this limited summary out of an abundance of caution to preserve her right to litigate these issues when she is able.

### D. ALTERNATIVELY, DEFENDANTS HAVE CONSTRUCTIVELY WAIVED ANY RIGHTS THEY HAD UNDER THE ARBITRATION AGREEMENT

In the alternative, Plaintiff submits that by choosing to sue Plaintiff in the state court action to collect on the HSBC Bank Nevada, N.A., account, Defendants have constructively waived any existing right to arbitrate Plaintiff's FDCPA claims.

"To safeguard its right to arbitration, a party must 'do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration." *Lewallen v. Green Tree Servicing, L.L.C.*, 487 F.3d 1085, 1091 (8th Cir. 2007) quoting *Cabintree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995). "The courtroom may not be used as a convenient vestibule to the arbitration hall so as to allow a party to create his own unique structure combining litigation and arbitration." *Christensen v. Dewor Developments*, 33 Cal.3d 778, 784 (Cal. 1983). The United States Court of Appeals for the Ninth Circuit has established the three conditions that must be met for a party to have constructively waived its right to arbitration: (1) the waiving party must have knowledge of an existing right to compel arbitration; (2) there must be acts by that party inconsistent with such an existing right; and (3) there must be prejudice resulting from the

waiving party's inconsistent acts. *United Computer System, Inc. v. AT&T Corporation*, 298 F.3d 756, 765 (9th Cir. 2002).

Here, Defendants knew of their existing right to compel arbitration and have acted inconsistently with their existing right, such that, should arbitration be compelled, Plaintiff will be prejudiced by these inconsistent acts.

1. Defendants Knew of Their Existing Right to Arbitration

In *United Computer System*, the Ninth Circuit found the first prong satisfied because the party had filed a state court complaint regarding the obligations of the parties under the agreement that provided arbitration rights. *Id.* Here, Defendants voluntarily sued Plaintiff to collect on the HSBC Bank Nevada, N.A., account in the state court action, and then pressed their lawsuit to trial and obtained a judgment. See Doc. 27.

Therefore, Defendants knew of their existing right to arbitration.

2. Defendants Acted in a Manner Inconsistent with their Right to Arbitrate

In *United Computer System*, the Ninth Circuit found the second prong satisfied because the party filed the lawsuit instead of paying the administrative fee to the arbitration entity. *United Computer System*, 298 F.3d at, 765. Again, by opting to use the state court to collect on the HSBC Bank Nevada, N.A., account governed by the Cardmember Agreement, Defendants acted in a mannter inconsistent with their right to arbitrate. Thus, Defendants have waived any right to arbitration.

3. Plaintiff Has been Prejudiced by Defendants' Inconsistent Acts

In *Van Ness Townhouses v. Mar Industries Corp.*, 862 F.2d 754 (9th Cir. 1988), the appellate court held that the defendant "implicitly waived arbitration under the third prong of the *Fisher* test because the appellants were prejudiced by [defendant's] inconsistent acts," including "litigat[ing] actively the entire matter—including pleadings, motions, and approving a pre-trial conference order."

- 10 -
OPPOSITION TO MOTION TO COMPEL ARBITRATION            Case No. 5:14-CV-03892-BLF-HRL

*Id.*, at 759.  Here, Defendants went further than the defendants did in *Van Ness*.  If, as Defendants argue, all of the claims between the parties are subject to arbitration, then Defendants' choice to litigate, rather than arbitrate, prejudiced Plaintiff by forcing her to invest time and expense to defend the state court action including participating in the discovery proceedings, trying the case to the court, and litigating the now-pending appeal.

Defendants have waived any right to arbitration, and Plaintiff was prejudiced by such waiver.

**E.  EQUITY PREVENTS ENFORCEMENT OF THE ARBITRATION AGREEMENT.**

Even if the Court finds that the Defendants have not waived any right to arbitrate they are able to prove they acquired, equity prevents the Arbitration Agreement from being enforced against Plaintiff.  9 USCS § 2 expressly permits a court to decline enforcement of arbitration agreement on grounds that exist at law or in equity for revoking a contract.  Without the option to go to court, arbitration leads to the inequitable application of substantive law.  Under the FAA, arbitrators are not required to apply the particular federal or state law that would be applied by a court.  This enables the stronger party to use arbitration to circumvent laws specifically enacted to regulate the parties' relationship, such as the Fair Debt Collection Practices Act. This circumventing of the FDCPA is inequitable and eliminates its deterrent effects upon unlawful collection practices.

In addition, the procedural methods of binding arbitration severely disadvantages Plaintiff in enforcing her FDCPA rights, as arbitration lacks many of the important due process safeguards offered by this Court.  For example, binding arbitration lacks the formal court-supervised discovery process necessary in this case to establish facts and to gain documents.  Further, arbitration need not be conducted with public access, often being conducted in secret.  Arbitrators need not follow judicial rules of evidence, and they generally have no obligation to provide a factual or legal discussion of their decision in a written opinion.  Moreover, arbitration often allows for only very limited judicial review.

As a result, arbitration procedural safeguards pale in comparison with those of this court.

Compelling arbitration will force Plaintiff to litigate her federally guaranteed consumer rights in private, likely with no record and no precedential value. Moreover, arbitration will have a chilling effect on the enforcement of the FDCPA. Congress clearly stated that it intended that the FDCPA be enforced by consumers acting as private attorneys general. See, S. Rep. No. 95-382 p.5 describing FDCPA as "self-enforcing"). To encourage consumers to aggressively litigate to protect their rights, Congress provided through 15 U.S.C.S. § 1692k(a) a fee-shifting provision, that required that a successful Plaintiff be awarded litigation costs and reasonable attorneys fees, while limiting the award to a prevailing Defendant to only those cases where both bad faith and harassment on the part of the consumer can be proven. Arbitration rules, however, generally allow the arbitrator to award costs and attorneys fees to the prevailing party, without the protections provided in the FDCPA at 1692k(a)(3). This "loser pays" policy in arbitration creates a substantial "chilling effect" upon the stated intent of Congress, that the consumer would enforce the FDCPA.

## IV.  CONCLUSION

Defendants cannot meet their burden to show an agreement to arbitrate exists. Defendants cannot meet their burden to show that they have standing to arbitrate, or that Plaintiff's FDCPA claims are subject to arbitration. In the alternative, Defendants have waived any right to arbitrate by choosing to sue Plaintiff in state court. Additionally, equity should preclude the Court from compelling Plaintiff to arbitrate her FDCPA claims. Plaintiff thus respectfully requests that the Court deny Defendants' Motion in its entirety.

oo0oo

| | |
|---|---|
| | CONSUMER LAW CENTER, INC. |
| Dated: January 15, 2015 | By: /s/ Raeon R. Roulston<br>Fred W. Schwinn (SBN 225575)<br>Raeon R. Roulston  (SBN 255622)<br>CONSUMER LAW CENTER, INC.<br>12 South First Street, Suite 1014<br>San Jose, California  95113-2418<br>Telephone Number: (408) 294-6100<br>Facsimile Number: (408) 294-6190<br>Email Address: fred.schwinn@sjconsumerlaw.com<br><br>O. Randolph Bragg (Pro Hac Vice)<br>HORWITZ, HORWITZ & ASSOCIATES, LTD.<br>25 East Washington Street, Suite 900<br>Chicago, Illinois  60602-1716<br>Telephone Number: (312) 372-8822<br>Facsimile Number: (312) 372-1673<br>Email Address: rand@horwitzlaw.com<br><br>Attorneys for Plaintiff<br>MARLA MARIE DAVIS |