United States District Court<br>Northern District of California

1

2

3 **UNITED STATES DISTRICT COURT**

4 **NORTHERN DISTRICT OF CALIFORNIA**

5 **SAN JOSE DIVISION**

6

7 MARLA MARIE DAVIS, on behalf of
herself and all others similarly situated;

Case No.   14-cv-03892-BLF

8            Plaintiff,

9       v.

**ORDER
(1) GRANTING DEFENDANTS'
MOTION TO COMPEL
ARBITRATION;
(2) STAYING ACTION PENDING
ARBITRATION**

10 CACH, LLC, et al.,

11            Defendants.

12 [Re:  ECF 26]

13

14       Plaintiff brings this purported class action against Defendants, alleging that Defendants

15 have violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a. Defendants

16 jointly move to compel arbitration of all of Plaintiff's claims and stay this action pending the

17 completion of arbitration,[1] which Plaintiff opposes. The Court determined that this motion was

18 appropriate for consideration without oral argument, pursuant to Civil Local Rule 7-1. Having

19 reviewed the briefing of the parties and the governing law, the Court GRANTS Defendants'

20 motion to compel arbitration, and STAYS the action pending the completion of arbitration.

21 **I.     BACKGROUND**

22       Plaintiff alleges that she incurred a financial obligation for personal, family, or household

23 purposes, a consumer credit account issued by HSBC Bank Nevada, N.A., *see* Compl. ¶ 25, which

24 is a "debt" as defined under the FDCPA. She later defaulted on this debt, and contends that this

25 defaulted debt was transferred from HSBC to Defendant CACH. Compl. ¶ 26. CACH filed suit in

26

27 [1] CACH and SquareTwo filed their motion to compel arbitration, ECF 26, to which the Mandarich
Law Group and Defendants Vos, Sutlian, and Sabawi filed a notice of joinder and supporting
28 memorandum. ECF 30.

United States District Court
Northern District of California

1  Santa Clara County Superior Court on April 29, 2014 to collect the defaulted debt. Compl. ¶ 28.

2  On August 15, 2014, Plaintiff contends that Defendants sent Plaintiff a Declaration Under

3  Penalty of Perjury, pursuant to California Code of Civil Procedure § 98 (hereinafter "Section 98

4  Declaration"). Compl. ¶ 29. Under certain circumstances, CCP Section 98 permits such

5  declarations in lieu of direct testimony, but it requires that the declaration's affiant has a current

6  address within 150 miles of the place of trial, and that the affiant is available for service of process

7  at that address during the 20 days immediately prior to trial. CCP § 98. Ms. Davis alleges that the

8  Section 98 Declaration she received was invalid, because the affiant did not have a current address

9  within 150 miles of the place of trial and was not available for service at the address given, *see*

10  Compl. ¶¶ 32-36, but that upon receipt of the Section 98 Declaration she was "required to engage

11  legal counsel to represent her, thereby incurring actual damages." Compl. ¶ 31.

12  Plaintiff contends that the use of such invalid Section 98 Declarations is a routine practice

13  of Defendants, Compl. ¶ 41, and seeks to represent a class of California residents who received

14  Section 98 Declarations in similar circumstances as she. Compl. ¶ 43.[2]

15  Defendants move to compel arbitration, contending that Ms. Davis' credit card account

16  with HSBC bank is governed by a Cardmember Agreement that includes a binding arbitration

17  clause. *See* Mot. at 1-2. This clause states, in pertinent parts:

18  
19  This arbitration provision shall apply to any Claim against us and to each of our . . . assigns.

20  . . .

21  You agree any claim, dispute, or controversy . . . arising from or relating to this Agreement or the relationships which result from this Agreement . . . shall be resolved, upon the election of you or us, by

22  binding arbitration pursuant to this arbitration provisions and the applicable rules or procedures of the arbitration administrator

23  selected at the time the Claim is filed.

24  _____

25  [2] Plaintiff "tentatively defines the class as (i) all persons resident in California, (ii) who were served by Defendants with a Declaration in Lieu of Direct Testimony at Trial, pursuant to

26  California Code of Civil Procedure § 98, (iii) where the declarant was located more than 150 miles from the courthouse where the collection lawsuit was pending, (iv) in an attempt to collect an

27  alleged debt originally owed to HSBC Bank Nevada, N.A., (v) regarding a debt incurred for personal, family, or household purposes, (vi) during the period beginning one year prior to the

28  date of filing this matter through the date of class certification." Compl. ¶ 43.

1    Livits Supp. Decl., ECF 39-1 Exh. 3 at 11-12.[3]

2    **II.    LEGAL STANDARD**

3           Enforceability of an arbitration clause, and the determination of the scope of that clause, is

4    governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.* Under the FAA,

5    arbitration agreements are "a matter of contract," and "shall be valid, irrevocable, and enforceable,

6    save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §

7    2. Such generally applicable contract defenses include "fraud, duress, or unconscionability, but not

8    [] defenses that apply only to arbitration or that derive their meaning from the fact that an

9    agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1746

10   (2011). A party seeking to invoke an arbitration agreement may petition the district court "which,

11   save for such an agreement, would have jurisdiction [to hear the case], for an order directing that

12   such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4; *see also*

13   *Trompeter v. Ally Financial, Inc.*, 914 F. Supp. 2d 1067, 1071 (N.D. Cal. 2012).

14          A district court faced with a petition to enforce an arbitration clause engages in a limited

15   two-part inquiry: first, it determines whether the arbitration agreement is valid, and second, it

16   determines whether the agreement encompasses the claims at issue. *See, e.g.*, *Mitsubishi Motors*

17   *Co. v. Soler Chrysler–Plymouth*, 473 U.S. 614, 627–28 (1985); *see also Trompeter*, 914 F. Supp.

18   2d at 1071 ("A district court must compel arbitration under the FAA if it determines that: (1) there

19   exists a valid agreement to arbitrate; and (2) the dispute falls within its terms."). A district court

20   does not consider challenges to the contract as a whole, but rather only specific challenges to the

21   validity of the arbitration clause itself. *See Rent–A–Center, W., Inc. v. Jackson*, 561 U.S. 63, 71

22   (2010) ("There are two types of validity challenges under § 2: 'one type challenges specifically the

23   validity of the agreement to arbitrate,' and 'the other challenges the contract as a whole.' . . .

24

25   ───────────────────────
     [3] Defendants also request that the Court take judicial notice of two documents: (1) the Complaint
26   filed by CACH in the Santa Clara County action, and (2) the Statement of Decision issued by the
     Superior Court in that action. *See* Defs.' RJN, ECF 27 at ¶¶ 1-2. Plaintiff does not oppose the
27   Request for Judicial Notice. The Complaint and Statement of Decision are both court documents
     that may be judicially noticed by this Court, and the Court therefore GRANTS Defendants'
28   request. *See, e.g.*, *Porter v. Ollison*, 620 F.3d 952, 955 n.1 (9th Cir. 2010).

United States District Court
Northern District of California

3

1   [O]nly the first type of challenge is relevant to a court's determination whether the arbitration

2   agreement at issue is enforceable.").

3          When determining whether the arbitration clause encompasses the claims at issue, "all

4   doubts are to be resolved in favor of arbitrability." *Simula v. Autoliv*, 175 F.3d 716, 721 (9th Cir.

5   1999) (interpreting the language "arising in connection with" in an arbitration clause to "reach[]

6   every dispute between the parties having a significant relationship to the contract and all disputes

7   having their origin or genesis in the contract.").

8   **III.   DISCUSSION**

9          Plaintiff makes several arguments in opposition to Defendants' demand that the parties

10  arbitrate her dispute. First, she contends that the arbitration agreement is inadmissible, for two

11  reasons: (1) Defendants have not properly authenticated the document, and (2) the document is

12  illegible and incomplete.[4]  Second, she argues that Defendants cannot show a connection between

13  the arbitration agreement and Plaintiff's account, because Ms. Livits' testimony stating that the

14  agreement is related to Plaintiff's HSBC bank account is inadmissible hearsay. Third, she argues

15  that Defendants have waived their rights to arbitrate any dispute with Plaintiff because they

16  previously filed a state court action to seek to recover on the alleged debt owed. *See* Pl.'s Opp. at

17  9-10. Fourth and finally, she contends that the arbitration agreement is inequitable, specifically

18  because it would "severely disadvantage[] Plaintiff in enforcing her FDCPA rights, as arbitration

19  lacks many of the important due process safeguards offered by this Court." *Id.* at 11.

20         For the reasons offered below, the Court finds Plaintiff's arguments unpersuasive.

21  Defendants have met their burden to prove that a valid and enforceable arbitration agreement

22

23  [4] Defendant CACH's motion includes a declaration by Yekaterina Livits, CACH's custodian of
    records. *See* Livits Decl., ECF 28. Plaintiff submitted an objection to the Livits declaration, and
    the exhibits attached thereto, which prompted Defendants with their Reply to submit a
24  supplemental declaration, also by Ms. Livits. *See* Livits Supp. Decl., ECF 39-1. Plaintiff did not
    reassert her objection to this supplemental declaration, as is required in this district to object to
25  new evidence submitted in the reply. *See* Civil L.R. 7-3(d)(1) ("If new evidence has been
    submitted in the reply, the opposing party may file within 7 days . . . an Objection to Reply
26  Evidence.").

27  The Supplemental Declaration of Ms. Livits appears to address all of the deficiencies alleged by
    Plaintiff in her objection. The Court has reviewed the Livits supplemental declaration under
28  Federal Rule of Evidence 803 to confirm its admissibility. *See infra* Part III.B.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    exists and that said agreement encompasses the claims at issue in this litigation.

2        **A.     Choice of Law**

3        State contract law governs the interpretation of arbitration agreements, *see, e.g.*, *Farrow v.*

4    *Fujitsu Am., Inc.*, 2014 WL 1396412, at \*3 (N.D. Cal. Apr. 9, 2014), and federal courts must

5    apply the choice of law rules of the forum state. Though Defendant CACH contends that the

6    arbitration agreement is valid under California law, the Mandarich Defendants point out, correctly,

7    that the Cardmember Agreement clearly includes a choice of law provision that elects Nevada law

8    to govern the contract. *See* Livits Supp. Decl. Exh. 3 at 13 ("This Agreement and your Account

9    will be governed by federal law and the laws of the state of Nevada."). Both states, however,

10   follow the choice of law principles outlined in the Restatement (Second) of Conflict of Laws,

11   which demands that the Court apply the choice of law selected by the parties to the contract unless

12   (1) the chosen state has no substantial relationship to the parties or transaction and there is no

13   other reasonable basis for the parties choice, or (2) application of the law of the chosen state would

14   be contrary to a fundamental policy of a state with a materially greater interest than the chosen

15   state in the determination of the particular issue. *See Progressive Gulf Ins. Co. v. Faehnrich*, 752

16   F.3d 746, 750 (9th Cir. 2014) ("Nevada tends to follow the Restatement (Second) of Conflict of

17   Laws [] in determining choice-of-law questions involving contracts."); *see also Nedlloyd Lines,*

18   *B.V. v. Superior Court*, 3 Cal. 4th 459, 464 (1992) (stating that California follows the Restatement

19   in contractual choice of law questions).

20       The Mandarich Defendants show that Nevada had a substantial relationship to the parties

21   or transaction, because HSBC was based there when the parties entered into the contract. *See*

22   Mandarich Memo., ECF 30 at 5 (citing the Federal Deposit Insurance Corporation's Internal

23   Directory page for HSBC, https://www2.fdic.gov/idasp/confirmation_outside.asp?inCert1=33863,

24   which states an address in Las Vegas, Nevada). Additionally, Nevada, like California, recognizes a

25   strong public policy in favor of enforcing arbitration agreements. *See, e.g.*, *Zabelny v. CashCall,*

26   *Inc.*, 2014 WL 67638, at \*2 (D. Nev. Jan. 8, 2014) (using Nevada choice of law principles to

27   enforce a contract that was to be governed under California law, the Court found that "Nevada

28   recognizes a strong public policy in favor of arbitration" similar to California's policy favoring

United States District Court
Northern District of California

1    arbitration). Neither Plaintiff nor the CACH Defendants argue against the enforcement of the

2    choice of law provision in the contract. *See generally* Pl.'s Opp., ECF 36; CACH Reply, ECF 39.

3    As such, the Court will interpret the contract and its arbitration clause pursuant to Nevada law.

4            **B.      Admissibility and Validity of the Arbitration Agreement**

5            Much of Plaintiff's opposition to the motion focuses on challenges to the admissibility of

6    the Livits Declaration and the Cardmember Agreement contained therein.

7            First, Plaintiff contends that Defendants are unable to authenticate the Cardmember

8    Agreement, because "there is no evidence that Defendants' purported Cardmember Agreement is

9    what it claims to be." Pl.'s Opp. at 3. Plaintiff argues that the Livits declaration is hearsay not

10   subject to any exception as well as testimony for which the declarant lacks personal knowledge.

11   *See, e.g.*, *id.* at 4. In response, Defendant CACH submits the Livits supplemental declaration and

12   argues that the Cardmember Agreement is admissible under the business records exception to the

13   hearsay rule established in Federal Rule of Evidence 803(6). CACH's Reply at 3-5.

14           Ms. Livits, who testifies that she is the custodian of records for CACH, *see* Livits Supp.

15   Decl., ECF 39-1 ¶¶ 1, 4, states in her supplemental declaration that CACH received Ms. Davis'

16   account through a purchase of a pool of accounts from Capitol One National Association, which is

17   the successor-in-interest of HSBC Bank Nevada, N.A. *See id.* at ¶ 8 ("Through that transaction,

18   CACH acquired . . . a credit card account that had been entered into between Ms. Davis and

19   HSBC, account number [ending in 8787]."). On September 5, 2014, CACH requested from

20   Capital One a copy of Ms. Davis' Cardmember Agreement, which Capital One provided, and on

21   September 24, 2014, "Ms. Davis' account number was written on the Cardmember Agreement

22   received from CapOne and uploaded to CACH's internal database." *Id.* at ¶ 11.  The account

23   number written on the document corresponds with the account number assigned to Ms. Davis'

24   account by SquareTwo, CACH's parent company. *Id.* at ¶ 13; *see also* ECF 28 Exh. A.

25           In this circuit, records that a business "receives from others are admissible under Federal

26   Rule of Evidence 803(6)" when three conditions are met: (1) the records are kept by the recipient

27   in the regular course of business, (2) are relied upon by the recipient business, and (3) the recipient

28   business has a substantial interest in the accuracy of the records. *See, e.g.*, *MRT Const., Inc. v.*

1   *Hardrives, Inc.*, 158 F.3d 478, 483 (9th Cir. 1998) (citing *United States v. Childs*, 5 F.3d 1328,

2   1333-34 n.3 (9th Cir. 1993). *Hardrives* is similar to this case: Hardrives attempted to introduce as

3   evidence bills it had received from its law firm, in order to prove its claims for set off and

4   recoupment.[5] MRT contended that the bills were inadmissible hearsay because Hardrives received

5   them from another party. The Ninth Circuit however held that the evidence was admissible

6   because:

7   
8   
9   

> Hardrives received the bills directly from the law firm and maintained the bills in its files. Further, Hardrives relied upon the bills as statements of fees owed to the law firm. Finally, the record indicates Hardrives had a substantial interest in the accuracy of the bills.

10   *MRT Const., Inc.*, 158 F.3d 478, 483.

11       Though this case involves the Defendants' attempt to collect on a debt, rather than a

12   contractual arrangement to pay attorneys' fees, the general principles underlying the admissibility

13   of the document is the same: just like Hardrives, CACH testifies through Ms. Livits' supplemental

14   declaration that it received the Cardmember Agreement directly from Capital One, maintains the

15   agreement in its files, and relies upon the Agreement in conducting its business of collecting debts.

16   As such, the Cardmember Agreement is admissible under FRE 803(6).

17       In her opposition, Plaintiff also argued that the copy of the Agreement provided by

18   Defendants was incomplete and illegible. CACH's reply includes a second version of the

19   document which it contends is fully complete. *See* Livits Supp. Decl. Exh. 3. Plaintiff did not file

20   an objection to this Declaration, as is required in this district to object to new evidence submitted

21   in the reply. *See* Civil L.R. 7-3(d)(1) ("If new evidence has been submitted in the reply, the

22   opposing party may file within 7 days . . . an Objection to Reply Evidence."). Though the

23   document is in places difficult to read, due to the small print and blurred text, it is not illegible.

24   *Cf., e.g.*, *Int'l Fire & Marine Ins. Co, Ltd. v. Silver Star Shipping Am., Inc.*, 951 F. Supp. 913, 920

25   (C.D. Cal. 1997). Plaintiff contends that the document is "impossible to decipher," Pl.'s Opp. at 8,

26   

_____

27   [5] Hardrives supported the introduction of its evidence through the testimony of its Chief Financial Officer. It is unclear whether the CFO was designated, as Ms. Livits is here, as Hardrives'

28   custodian of records.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    but the Court has read the document in its entirety, and found that the text of the Arbitration

2    Clause at page 12 of the document conforms to Defendants' citations in the motion and replies.[6]

3           Finally, Plaintiff claims that Defendants cannot show that the Cardmember Agreement is

4    related in any way to Plaintiff's account with HSBC. *See* Pl.'s Opp. at 6. However, as Livits'

5    testimony in the supplemental declaration establishes, the Cardmember Agreement was provided

6    to CACH by Capital One following a request for documents related to Ms. Davis' account, *see*

7    Livits Supp. Decl. ¶ 11, and the handwritten number included on page 1 of the Cardmember

8    Agreement "corresponds with the account number assigned to Davis' account by SquareTwo,"

9    CACH's parent company. *Id.* at ¶ 13.[7]

10         **C.**     **Whether the Agreement Encompasses the Claims at Issue**

11           Once the Court determines that the arbitration clause at issue is valid, it must thereafter

12    determine only whether the claims at issue fall within the ambit of that clause. *See, e.g.*, *Chiron*

13    *Corp. v. Ortho Diag. Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) ("Accordingly, our role is

14    strictly limited to determining arbitrability and enforcing agreements to arbitrate, leaving the

15    merits of the claim and any defenses to the arbitrator.").

16           Here, the Cardmember Agreement includes within it a broad arbitration clause, subjecting

17    "any claim . . . arising from or relating to this Agreement or the relationship which result from this

18    Agreement" to arbitration upon the invocation, by either party, of the arbitration clause. *See* Livits

19

20    _____

[6] Further, Plaintiff's opposition challenged the legibility of a different, partial version of the

21    Cardmember Agreement. The first paragraph of that portion of the Cardmember Agreement, *see* ECF 28 at 5, includes a dark, blurry portion of text in the first paragraph that is nearly unreadable.

22    However, Defendants provided the Court with a different, complete version of the Cardmember Agreement with the reply, to which Plaintiff did not object. *See* ECF 39-1 at 38-42.

23    [7] The Arbitration clause clearly indicates that the right to arbitration extends to HSBC's assigns.

24    *See* Livits Supp. Decl. Exh. 3 at 11 ("This arbitration provision shall apply to any Claim against us and to each of our . . . successors and assigns."). Similarly, the other Defendants can enforce the

25    arbitration clause because the FDCPA claims against those defendants (Mandarich Law Group, Ryan Vos, Elizabeth Sutlian, and Nader Sabawi) are encompassed by the Agreement, which

26    compels arbitration of any claims "relating to this Agreement or the relationship which result from this Agreement." *Id.* at 12; *see also* *Wolf v. Langemeier*, 2010 WL 3341823, at *4 (E.D. Cal. Aug.

27    24, 2010) (holding that non-signatories to a contract which includes an arbitration clause may enforce that clause when their claims are "sufficiently encompass[ed]" by the terms of the clause)

28    (citing *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006)).

United States District Court
Northern District of California

1    Supp. Decl. Exh. 3 at 12. In this circuit, when a valid arbitration clause includes such broad

2    language, "all doubts are to be resolved in favor of arbitrability." *Simula*, 175 F.3d 716, 721

3    (finding that the claims in the complaint need only "touch matters" covered by the agreement

4    containing the arbitration provision). Here, Plaintiff's FDCPA claim arises from Defendants'

5    attempt to collect her debt originally owed to HSBC. Plaintiff's incurring of said debt falls

6    squarely within the relationship between Plaintiff and HSBC governed by the Cardmember

7    Agreement. *Cf., e.g.*, *Chiron*, 207 F.3d 1126, 1131 ("The record here leaves little doubt that the

8    dispute is subject to arbitration . . . . The parties' arbitration clause is broad and far reaching.").

9         Plaintiff makes two arguments as to why the Court should not read the arbitration clause to

10   encompass the claims at issue in this litigation. First, Plaintiff contends that arbitration would

11   prejudice her ability to enforce the provisions of the FDCPA, because arbitration lacks "important

12   due process safeguards offered by this Court," as well as contending that arbitration in general,

13   namely how costs can be awarded to prevailing defendants, would chill private actions to enforce

14   the FDCPA, and run afoul of Congress' intent in enacting the FDCPA to encourage consumers to

15   aggressively protect their rights. *See* Pl.'s Opp. at 11-12. Second, Plaintiff argues that Defendants

16   have waived any right to arbitration by bringing suit in state court to collect on Plaintiff's HSBC

17   debt. *See id.* at 9-11.

18        The Supreme Court has clearly held that statutory claims may be subject to arbitration,

19   "unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the

20   statutory rights at issue." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991); *see*

21   *also Tripathi-Manteris v. Stoldal*, 2012 WL 1068699, at *2 (D. Nev. Mar. 29, 2012) ("By agreeing

22   to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute;

23   it only submits their resolution to an arbitral, rather than a judicial, forum."). Such an intention

24   may arise from the Act itself, its legislative history, or an inherent conflict between arbitration and

25   the Act's purpose. *See id.*; *see also Shearson/Am. Express Inc. v. McMahon*, 482 U.S. 220, 227

26   (1987).

27        The Supreme Court has consistently "rejected generalized attacks on arbitration that rest on

28   'suspicion of arbitration as a method for weakening the protections afforded in the substantive law

9

United States District Court
Northern District of California

1    to would-be complainants.'" *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89-90 (2000).

2    Plaintiff's arguments here do not rise above this mere suspicion. She contends only that Congress

3    intended the FDCPA to "be enforced by consumers as private attorneys general" and that

4    permitting arbitration in FDCPA suits would have a "chilling effect" on the statute. *See* Pl.'s Opp.

5    at 12. Plaintiff points to no language in the statute that evinces Congressional intent to prevent

6    arbitration of FDCPA claims, however, or any inherent conflict between FDCPA's purpose and

7    arbitration. Myriad courts have analyzed the text and purpose of the FDCPA and found that

8    FDCPA claims are arbitrable. *See Miller v. Nw. Trustee Servs., Inc.*, 2005 WL 1711131, at *4 n.4

9    (E.D. Wash. July 20, 2005) ("Neither the text of the FDCPA, its legislative history, nor an

10   examination of the FDCPA's underlying purpose reveals any indication that Congress intended to

11   preclude FDCPA claimants from resolving their disputes in arbitration."); *Carbajal v. H&R Block

12   Tax Servs., Inc.*, 372 F.3d 903, 906 (7th Cir. 2004); *Brown v. Sklar-Markind*, 2014 WL 5803135,

13   at *12 (W.D. Pa. Nov. 7, 2014) ("[T]he overwhelming majority of cases to consider the matter

14   have, not surprisingly, compelled arbitration of FDCPA claims finding such claims not

15   categorically exempt from the FAA's reach."); *MBNA Am. Bank, N.A. v. Ruhl*, 2007 WL 1031553,

16   at *2 (M.D. Pa. 2007); *Shetiwy v. Midland Credit Mgmt.*, 959 F. Supp. 2d 469, 475 (S.D.N.Y.

17   2013). This Court joins those courts in finding that FDCPA claims are arbitrable under the FAA.

18       Plaintiff's waiver argument fares no better. She contends that CACH has waived its right

19   to compel arbitration by suing Plaintiff in state court to collect on the debt she owed to HSBC.

20   Under the law of this circuit, a party waives its right to arbitration when it knows of its right to

21   compel arbitration, acts inconsistent with that right, and such inconsistent acts prejudice the non-

22   waiving party. *See, e.g.*, *United Computer Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 765 (9th Cir.

23   2002).  A party arguing for such a waiver, however, "bears a heavy burden of proof." *Van Ness

24   Townhouses v. Mar Indus. Corp.*, 862 F.3d 754, 578 (9th Cir. 1988).

25       In this case, Plaintiff has not shown that Defendants acted inconsistent with their right to

26   compel arbitration. The mere filing of a lawsuit in state court to collect on a debt does not mean

27   that the debt collector cannot then compel arbitration if the debtor later brings suit regarding

28   different claims. *See, e.g.*, *Hodson v. Javitch, Block & Rathbone, LLP*, 531 F. Supp. 2d 827, 831

1   (N.D. Ohio 2008) (finding that filing collections actions in state court does not waive the party's

2   right to later seek arbitration of FDCPA claims subsequently brought by the debtor); *see also*

3   *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 133 (2d Cir. 1997) ("Finding waiver where a party

4   has previously litigated an unrelated yet arbitrable dispute would effectively abrogate an

5   arbitration clause once a party had litigated *any* issue relating to the underlying contract.")

6   (emphasis in original). Similarly, in *United Computer*, the Ninth Circuit found that the party had

7   acted inconsistent with its right to arbitrate only after United Computer brought a civil suit against

8   defendant AT&T, requested a jury trial, forced AT&T to incur expenses related to that suit, then

9   *itself* moved to compel arbitration in that same action. *See* 298 F.3d 756, 764-65 ("The filing of

10  *this lawsuit* by UCS, rather than paying the $2,000 administrative fee [to the arbitrator listed in the

11  contract], is also inconsistent with the terms of the arbitration clause.") (emphasis added). The

12  Ninth Circuit further found no prejudice to AT&T after United Computer withdrew its request to

13  arbitrate. *See id.* at 765. Unlike in *United Computer*, this action in which Defendants move to

14  compel arbitration is separate from the one brought by CACH in state court. Plaintiff does not

15  meet its heavy burden to show that Defendants waived their right to seek arbitration of Plaintiff's

16  FDCPA claims.

17          Defendants also argue that Plaintiff's purported class claims cannot proceed to arbitration

18  because the arbitration clause in the Cardmember Agreement does not "include a contractual basis

19  for concluding that the part[ies] agreed to do so." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Grp.*, 559

20  U.S. 662, 684 (2010). Plaintiff does not respond to this argument in her opposition. The Supreme

21  Court is clear that "class-action arbitration changes the nature of arbitration to such a degree that it

22  cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an

23  arbitrator." *Id.* at 685; *see also Am. Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304,

24  2309 (2013) ("Nor does congressional approval of Rule 23 establish an entitlement to class

25  proceedings for the vindication of statutory rights.").

26          Here, the Cardmember Agreement contains neither an express class action waiver nor an

27  authorization that class claims are arbitrable. Courts in this district have found that, in the absence

28  of an explicit class action waiver, whether an arbitration clause permits or precludes the arbitration

United States District Court
Northern District of California

11

United States District Court
Northern District of California

1   of class claims is a question for the arbitrator. *See, e.g.*, *Westcott v. ServiceMaster Global*

2   *Holdings, Inc.*, 2011 WL 2565621, at \*3 (N.D. Cal. June 29, 2011) (holding that the arbitrator

3   must decide whether the arbitration clause permits class claims if it is unclear whether the

4   defendant has consented to class arbitration); *see also Yahoo!, Inc. v. Iversen*, 836 F. Supp. 2d

5   1007, 1013 (N.D. Cal. 2011) (finding that nothing prevents an "arbitrator or the subsequent

6   reviewing court from finding that the parties consented to submit class claims to arbitration *even*

7   *in the absence of any explicit discussion of class arbitration* within the four corners of the

8   agreement itself") (emphasis added). The Court therefore rejects Defendants' request that Ms.

9   Davis' claims proceed to arbitration on an individual basis only. *See, e.g.*, CACH's Mot. at 6.

10          **D.          Defendants' Motion to Stay the Litigation Pending Arbitration**

11          Defendants move the Court to stay the action pending the completion of arbitration. *See*

12   CACH's Mot. at 6. Under the FAA, the Court must stay litigation pending the completion of

13   arbitration when it determines that "the issue involved in such suit or proceeding is referable under

14   such an agreement." 9 U.S.C. § 3 ("[The Court,] on application of one of the parties [must] stay

15   the trial of the action until such arbitration has been held in accordance with the terms of the

16   agreement.").

17   **IV.   ORDER**

18          Defendants have shown that a valid arbitration clause exists between the parties, and that

19   Plaintiffs' FDCPA claims are encompassed by said clause. The Motion to Compel Arbitration is

20   therefore GRANTED, and this action is STAYED pending the completion of arbitration. The

21   parties shall file with the Court, no later than March 2, 2016, a two-page letter updating the Court

22   as to the status of arbitration.

23          **IT IS SO ORDERED.**

24   Dated: March 2, 2015

25   _____

26   BETH LABSON FREEMAN
     United States District Judge

27

28