UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARLA MARIE DAVIS,<br><br>    Plaintiff,<br><br>v.<br><br>CACH, LLC, et al.,<br><br>    Defendants. | Case No. 14-cv-03892-BLF<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION**<br><br>[Re: ECF 49] |

This case arises out of a debt collection action. On March 2, 2015, the Court granted Defendants' motion to compel arbitration and stayed this action pending the completion of arbitration. *See* ECF 45. Thereafter, on March 4, 2015, Plaintiff filed a motion for leave to file a motion to seek reconsideration of the Court's order compelling arbitration. The Court granted leave, and, following briefing, the parties appeared for oral argument on the motion for reconsideration on May 7, 2015.

Under Civil Local Rule 7-9(b), a party may seek reconsideration in three circumstances:

> (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or
>
> (2) The emergence of new material facts or a change of law occurring after the time of such order; or
>
> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Plaintiff brings her motion pursuant to Rule 7-9(b)(3). The Court has considered the briefing and argument of the parties, and DENIES Plaintiff's motion.

**A.     Relevant Factual Background**

Plaintiff allegedly defaulted on a debt accrued through a consumer credit account issued by HSBC Bank Nevada, N.A. This account was governed by a Cardmember Agreement and Disclosure Statement ("Cardmember Agreement"), which included within its terms an arbitration clause that stated:

> This arbitration provision, shall apply to *any Claim against us*, and to each of our . . . assigns. . . . You agree any Claim, dispute, or controversy (whether based upon contract, tort, intentional or otherwise, constitution, statue, common law, or equity and whether pre-existing, present or future), including initial claims, counter-claims, cross-claims and third party claims arising from or relating to this Agreement or the relationships which result from this Agreement . . . shall be resolved, upon the election of you or us, by binding arbitration pursuant to this arbitration provision.

*See* Livits Supp. Decl., ECF 39-1 Exh. 3 at 11-12 (emphasis added).

Plaintiff's defaulted debt was thereafter transferred to Defendant CACH pursuant to a Forward Flow Receivable Sale Agreement ("Sale Agreement"). *See* Livits Supp. Decl. Exh. B. The Bill of Sale to this Sale Agreement states that "Capital One . . . hereby sells, assigns, and transfers *all right, title and interest* in the Accounts identified . . . to CACH, LLC ("Buyer")." *Id.*, ECF 39-1 at 27 (emphasis added).[1]

**B.     Plaintiff's Grounds for Reconsideration**

Plaintiff argues that CACH was not assigned the right to compel arbitration because of a provision in the Sale Agreement, Section 6.10, which states:

> 6.10.   **Arbitration**. Buyer agrees that it shall not use arbitration for collection of debt or otherwise in connection with the Accounts purchased under this Agreement, unless arbitration is commenced by the Borrower or otherwise mutually agreed to by Buyer and Borrower.

Livits Supp. Decl. Exh. B at 9.

A copy of this document was attached for the first time to Defendant CACH's reply brief. Plaintiff argues that the Court failed to consider the language in this arbitration clause when granting the motion to compel arbitration, and that the Court should read this language as an

---

[1] Capital One is the successor-in-interest to HSBC Bank Nevada, N.A. *See* Compl., ECF 1 ¶ 8.

1    outright bar on the ability of CACH to compel arbitration in this action. The Court agrees with
2    Plaintiff that this language must be considered, and that the order compelling arbitration did not
3    discuss the impact of Section 6.10 on Defendants' right to compel arbitration.

**C.   Discussion**

The Court is tasked with determining the meaning of Section 6.10 in the Sale Agreement. Plaintiff argues that this section of the contract means that CACH was never assigned the right to compel arbitration unless the Borrower also agreed to arbitration. Defendants, in contrast, argue that this section means that CACH could not affirmatively use arbitration against a debtor in order to collect a debt or otherwise: Defendants contend that Section 6.10 mirrors the initial arbitration clause between Plaintiff and HSBC, under which any claim brought by the Plaintiff against HSBC ("This arbitration provision, shall apply to any Claim against us . . . .") could be compelled to arbitration.

Here, the Sale Agreement states that it is to be governed by the laws of Virginia. *See* Livits Supp. Decl. Exh. 2 at 23 (Section 13.5). Under California choice of law rules, California courts apply the choice of law selected by the parties to the transaction unless (1) the chosen state has no substantial relationship to the parties or transaction and there is no other reasonable basis for the parties' choice, or (2) application of the law of the chosen state would be contrary to a fundamental policy of a state with a materially greater interest than the chosen state in the determination of the particular issue. *See Nedlloyd Lines, B.V. v. Superior Court*, 3 Cal. 4th 459, 464 (1992). Neither party challenges the election of Virginia law, and the Court is aware of no application of Virginia law regarding contract interpretation that would run contrary to the fundamental public policy of California. As such, the Court will interpret the provisions of the Sale Agreement under Virginia law.[2]

Under Virginia law, the "guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the

---

[2] Due to the similarities in the law of contract interpretation under Virginia and California law, the Court's analysis would result in the same conclusion were the contract to be interpreted under California law.

1   parties intended what the written instrument plainly declares." *Brooks v. Bankson*, 445 S.E. 2d
2   473, 476 (1994). The Court is "not permitted to rewrite the parties' contract 'even when, in light
3   of the facts know to [it], the court might think they should have adopted different language.'"
4   *Balbir Brar Assoc. Inc. v. Consol. Trading Servs. Corp.*, 1996 WL 1065615, at *2 (Oct. 1, 1996).
5   The Court must "interpret the contract as a whole so as to ensure that each clause is given purpose
6   and effect." *Id.* (citing *Winn v. Aleda Constr. Co.*, 227 Va. 304, 307 (1984)).

7         The Court notes first that this contract is between two sophisticated entities – Capital One
8   and CACH – which engage regularly in these sort of debt purchase agreements. This is not a
9   contract between a corporate entity and an unsophisticated consumer. The Bill of Sale portion of
10  the transaction clearly "assigns and transfers *all right*, title and interest in the Accounts identified,"
11  ECF 39-1 at 27 (emphasis added), including Plaintiff's account. Under the original contract
12  between Plaintiff and HSBC, any action brought by Plaintiff against HSBC or its assigns was
13  subject to binding arbitration upon the election of either party. *See* ECF 39-1 Exh. 3 at 11-12. That
14  original arbitration provision, however, was silent as to the rights HSBC had when it brought
15  affirmative claims against the debtor, whether for debt collection or any other circumstance related
16  to the account.

17        Plaintiff asks the Court to read Section 6.10 as excluding from the rights assigned from
18  Capital One to CACH in the Sale Agreement the right to compel arbitration of claims brought by
19  Plaintiff. She contends that the language "Buyer agrees that it shall not use arbitration for
20  collection of debt or otherwise in connection with the Accounts purchased" means that CACH was
21  given all rights under the original contract except the right to compel arbitration in any
22  circumstance without the Borrower's consent. *See, e.g.*, Reply at 3.

23        The Court, however, agrees with Defendants that this provision of the Sale Agreement
24  tracks the language used in the original arbitration clause contained within Plaintiff's Cardmember
25  Agreement.[3] Under that Cardmember Agreement, the arbitration provision gave the Cardmember

---

[3] Defendants make two other arguments that the Court briefly addresses here. First, Defendants argue that Plaintiff's argument regarding Section 6.10 is untimely. This argument is unpersuasive, however, because Defendants did not attach the contract to the motion to compel arbitration until the Reply brief. The Court issued its order on the motion to compel arbitration without oral


1 no right to compel arbitration for claims brought against the Cardmember. *See* Livits Supp. Decl. Exh. 3 at 11-12. Thus, any claim brought by the Cardmember against HSBC or its assigns could be compelled to arbitration upon the unilateral election of HSBC or its assigns. *See id.* The arbitration clause in the Cardmember Agreement is not a two-way street; rather, the arbitration clause sets forth how actions can proceed when they are brought by the Cardmember – HSBC or its assigns could elect whether to compel arbitration, but Plaintiff had no rights in that decision.

The Court finds that the language in Section 6.10 of the Sale Agreement does not evidence the intent of the parties to wholly eviscerate the arbitration right contained within the Cardmember Agreement, for several reasons. The plain language of Section 6.10 does not clearly withhold the right to compel arbitration from the terms of the assignment – if Capital One wanted to transfer all rights to CACH *except* the right to compel arbitration, it "was required to express that exemption in the plain language [of the contract]." *Landmark HHH, LLC v. Gi Hwa Park*, 671 S.E. 2d 143, 147 (2009). Section 6.10 contains no such express limitation of the assignment; instead, the language "for collection of debt or otherwise" outlines what rights CACH has regarding claims it brings against the Borrower – it cannot file an action in an arbitral forum instead of a court of law without the consent of the Borrower. The Bill of Sale in the Sale Agreement transferred all rights and interest from Capital One to CACH, and the arbitration clause in the Cardmember Agreement permitted HSBC (or its assigns) to compel arbitration when the Cardmember brought "any claim" against it; therefore, it would run counter to "the intention of the parties as addressed by them in the words they have used" to declare that Section 6.10 constitutes an unambiguous limitation of CACH's right to compel arbitration in a circumstance, such as here, where the Borrower brought suit against CACH. *See, e.g.*, *Christopher Assocs. v. J.C. Sessoms, Jr.*, 425 S.E. 2d 795, 797 (1993); *cf. also Winn*, 227 Va. at 307 (stating that the Court must construe the contract as a whole in order to give proper effect to the terms used by the parties).

---

argument, giving Plaintiff no opportunity to raise this issue prior to a motion for reconsideration. Second, Defendants argue that Plaintiff lacks standing to enforce the terms of the Sale Agreement. Though Defendants are correct that the Sale Agreement states that it can only be enforced by the Buyer and Seller, *see* Livits Supp. Decl. Exh. 2 at 24, Plaintiff is not attempting to enforce the Sale Agreement. Instead, Plaintiff argues that the Sale Agreement did not transfer the right to compel arbitration to Defendants, thus precluding them from moving to compel arbitration in this suit.

The Court must determine the intent of the contracting parties, through the language used by the parties in the contract. These sophisticated entities drafted an agreement which transferred all rights from Capital One to CACH. If they intended to transfer all rights *except* the power to compel arbitration when claims were brought against CACH, they would have expressly stated that intention. Instead, the language in Section 6.10 relied on by Plaintiff in support of the motion for reconsideration tracks the parallel language used in the arbitration clause contained in the Cardmember Agreement: the language "Buyer agrees that it shall not use arbitration" in Section 6.10 serves as a limitation on what CACH can do *when it brings a claim* against the Borrower, whether for debt collection or otherwise. If the Borrower brings a claim against CACH, as is clearly outlined in the Cardmember Agreement, CACH has the right to compel arbitration. That is precisely what CACH and the Mandarich Defendants have done in this suit, an FDCPA action brought by a Cardmember Plaintiff.

As such, the Court finds that Section 6.10 does not limit Defendants' ability to compel arbitration in this suit, and DENIES Plaintiff's motion for reconsideration of the Court's order granting Defendants' motion to compel arbitration. This action is STAYED pending the completion of arbitration. The parties shall file with the Court, no later than March 2, 2016, a two-page letter updating the Court as to the status of arbitration.

**IT IS SO ORDERED.**

Dated: May 13, 2015

_____
BETH LABSON FREEMAN
United States District Judge